IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GLORIA A. SESAY              )
                            )
        v.                  )         NO: 3:17-0634
                            )
WEDGEWOOD TOWERS, et al.     )

**TO:  Honorable Waverly D. Crenshaw, Jr., Chief District Judge**

## R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered April 14, 2017 (Docket Entry No. 3), the Court referred this *pro se* case to

the Magistrate Judge, pursuant 28 U.S.C. §§ 636(b), Rule 72(b) of the Federal Rules of Civil

Procedure, and the Local Rules of Court, for pretrial proceedings.

Presently pending before the Court is the motion for summary judgment filed by Defendants

Wedgewood Towers, First Cumberland Properties, Trish Greer, and Patricia Horner (Docket Entry

No. 31), to which Plaintiff has responded in opposition. *See* Docket Entry No. 40.  For the reasons

set out below, the undersigned respectfully recommends that the motion be granted and this action

be dismissed.

## I.  PROCEDURAL BACKGROUND

Gloria A. Sesay ("Plaintiff") is a resident of Nashville, Tennessee.  On March 22, 2017, she

filed this case *pro se* and *in forma pauperis* against Wedgewood Towers, First Cumberland

Properties ("First Cumberland"), Trish Greer ("Greer"), and Patricia Horner ("Horner") (hereinafter

referred to collectively as "Defendants").  Wedgewood Towers is an apartment building located in

Nashville, Tennessee, and is where Plaintiff formerly lived.[1] At all times relevant to the lawsuit, Horner was the Property Manager at Wedgewood Towers. First Cumberland is the managing agent for Wedgewood Towers. Greer is currently the Executive Vice President of First Cumberland and also held that position at all times relevant to the lawsuit.

In her complaint, Plaintiff does not set out the specific legal basis for her lawsuit, nor does she set out specific legal claims. Instead, as grounds for filing her lawsuit in federal court, Plaintiff states:

> I was evicted because I had filed an Identity Theft complaint against Wedgewood Towers and Mrs. Patricia Horner. The manager therefore choose to evict me due to the ongoing investigation, stating that I was behind on paying my rent.

*See* Complaint (Docket Entry No. 1) at 1. Plaintiff sets out the following narrative as factual support for her lawsuit:

> I moved into Wedgewood Towers in July of 2013 and was later asked to head the Residents Association. I started the organization from ground on up, that is I wrote the by-laws, paid for the EIN numbers and letters of solicitation. I was asked to produce my proof of legal residence before I can move in or rent to. I had to show [and/or] furnished my proof of citizenship. As we progressed, Mrs. Patricia Horner tried and did everything to hinder the Resident Association or to get me out. I filed a complaint to HUD and she evicted most of the people that testified on my behalf. Sometime last fall I was trying to have the residents registered for school and had teamed up with MTA. I was sending breakfast to the residents and Ms. Zena Downs of Apt. 902 came cursing at me. The mgr. went around asking the residents to lie on me stating that I was disruptive and I woke the entire bldging (sic) or residents up, which is untrue, and later got an eviction notice for non-payment.

*Id.* at 2. In the section of her complaint listing her prayers for relief, Plaintiff states as follows:

---

[1] Defendants assert that Wedgewood Towers is a project based Section 8 property under 42 U.S.C. § 1437f. *See* Affidavit of Patricia Greer (Docket Entry No. 35-1) at ¶ 6. Generally, the Section 8 voucher program is a voluntary program through which the federal government aids eligible low-income individuals and families in obtaining housing in the private market from participating landlords. *See Graoch Assocs. # 33, L.P. v. Louisville/Jefferson Cty. Metro Human Relations Comm'n*, 508 F.3d 366 (6th Cir. 2007)

a. Psychological abuse and emotional distress, humiliation by lying that I was not paying my rent, to which I have receipts and a letter signed by Mrs. Horner that I made timely payments.

b. Pain and suffering, destruction of personal property, medical bills (co-pays and transportation) to and from the doctor.

c. Discrimination due to ethnicity, sex, national origin. I am not only of an African descent, but with a foreign accent, belongs to a special classification (missionary).

d. Identity theft, discrimination against fair housing rules. Destruction of personal property by asking me to produce proof of citizenship but not requesting it from Deliah Harris of Apt. 814.

*Id.* at 3. Attached to Plaintiff's three page complaint are 62 pages of documents, many of which contain hand written notations or comments by Plaintiff. *See* Docket Entry No. 1-1.

In the Order of referral, the Court found that Plaintiff alleged a colorable claim for relief under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, *et seq.* Defendants[2] filed a timely answer (Docket Entry No. 12), and pretrial proceedings, including discovery, occurred pursuant to two scheduling orders. *See* Docket Entry Nos. 16 and 23.

## II. FACTUAL BACKGROUND[3]

Plaintiff is a black female who is originally from the country of Sierra Leone and is a naturalized citizen of the United States of America.[4] She professes to be of the Christian faith.

---

[2] Although Plaintiff also named Ernie Harrell as a defendant, he was dismissed by the Court upon initial review. *See* Docket Entry No. 3 at 1.

[3] Given the somewhat minimal background allegations in the complaint, the factual background summary is gleaned from the record and is included to provide a factual outline for Plaintiff's lawsuit.

[4] *See* Plaintiff's Deposition (Docket Entry No. 35-7) at 112.

3

Plaintiff was a resident at Wedgewood Towers from July 30, 2013, to November 16, 2016, when she was evicted and her lease was terminated. At some point after moving into Wedgewood Towers, Plaintiff took the lead role in establishing the Wedgewood Towers Resident Association ("Resident Association") and in acting as its president.[5] The Resident Association organized meetings, events, and meals for residents in an effort to benefit the residents of Wedgewood Towers and appears to have been active during Plaintiff's involvement with the organization.

While a resident at Wedgewood Towers, Plaintiff frequently interacted with Defendant Horner, who is a white United States Citizen and professes to be of the Christian faith.[6] During many of these interactions, Plaintiff perceived Horner to be confrontational and/or hostile toward Plaintiff. Additionally, Plaintiff believed that she was the victim of incidents of identity theft in which Defendant Horner was involved and that she was generally treated worse or differently than other residents. Plaintiff made her displeasure with the situation known to Wedgewood Towers and First Cumberland, both orally and through written letters, and both sides exchanged written letters about Plaintiff's complaints, with Defendant Greer making at least three written responses to Plaintiff's complaints. *See* Exhibits to Complaint (Docket Entry No. 1-1) at 1-6, 17-19, 21-23, and 58-60.

On three occasions, events occurred that resulted in Plaintiff being given a written notice of lease violations from Hall & Associates, a law firms that represents Wedgewood Towers. On June 26, 2015, Plaintiff was given a fourteen-day notice of termination of her lease because of an incident that occurred on June 24, 2015, when, in the aftermath a disagreement about recycling bins at

---

[5] *Id*. at 56-57.

[6] *See* Horner Affidavit (Docket Entry No. 35-4).

4

Wedgewood Towers, she is alleged to have left a threatening voice mail for Defendant Horner and sent an e-mail that included false and disparaging comments. *See* Docket Entry No. 35-9 at 2. Although the notice letter threatened termination, the matter was apparently remedied because Plaintiff remained a tenant subsequent to the letter. On June 24, 2016, Plaintiff was given a second fourteen-day notice of termination of her lease because of an incident that occurred on June 16, 2016, when she is alleged to have yelled at, threatened, and been belligerent toward Defendant Horner after an incident involving two events that were scheduled for the same time in the community room at Wedgewood Towers. *See* Docket Entry No. 35-10. Although the notice letter threatened termination, the matter was apparently remedied because Plaintiff remained a tenant subsequent to the letter.

On September 19, 2016, Plaintiff was given a third fourteen-day notice of termination of her lease because of an incident that occurred on September 8, 2016, when she is alleged to have yelled and screamed at another resident at Wedgewood Towers. *See* Docket Entry No. 35-11. Unlike the prior two letters, this letter did not offer to continue the lease if the matter was promptly remedied, and Plaintiff's lease was terminated, leading to her eviction from Wedgewood Towers on or about November 16, 2016.

While at Wedgewood Towers, Plaintiff interacted with the Department of Housing and Urban Development ("HUD") about some of her complaints. On June 7, 2015, she filed a complaint (#04-15-0741-8) with HUD, alleging that she was treated differently than other residents at Wedgewood Towers because of national origin discrimination. *See* Docket Entry No. 35-2. Specifically, she alleged: (1) that she was cursed at and threatened with a lease violation by Defendant Horner on August 24, 2014, when she reported a violent act by a male resident; (2) that services and repairs

5

were not timely made in her unit; and (3) that her rent was raised by $100.00 a month effective July 1, 2015. *Id.* During the course of the investigation, Plaintiff also raised an allegation of discrimination based on her sex, asserting that she had been given a lease violation on June 26, 2015, although a male resident had not been given a lease violation the prior month, as well as an allegation that "respondents had harassed her by stealing her identity." *See* Docket Entry No. 35-3 at 9-10. On January 20, 2016, HUD dismissed the complaint with a letter of determination, finding "that no reasonable cause exists to believe that a discriminatory housing practice occurred." *Id.* at 2-3.[7]

### III. MOTION FOR SUMMARY JUDGMENT AND RESPONSE

Defendants seek summary judgment in their favor under Rule 56 of the Federal Rules of Civil Procedure. Defendants support their motion with: (1) a memorandum of law (Docket Entry No. 32); (2) a statement of undisputed material facts (Docket Entry No. 33); (3) the affidavit of Defendant Greer (Docket Entry No. 35-1) and exhibits attached thereto (Docket Entry Nos. 35-2 and 35-3); (4) the affidavit of Defendant Horner (Docket Entry No. 35-3) and exhibits attached thereto (Docket Entry Nos. 35-4 and 35-5); and, (5) excerpts from Plaintiff's deposition (Docket Entry No. 35-7) and exhibits attached thereto (Docket Entry Nos. 35-8 to 35-11).

Defendants argue that there is no merit to the lawsuit. They contend that the two-year statute of limitations applicable to FHA claims bars any claims based upon events occurring more than two

---

[7] Plaintiff attaches to her complaint a handwritten HUD complaint, dated October 8, 2014, that alleges discrimination on account of race, religion, sex, and national origin based on an event when a male tenant threatened her and an event when Defendant Horner told a white woman not to post flyers for Plaintiff. *See* Docket Entry No. 1-1 at 13. There is nothing in the record indicating that this complaint was accepted by HUD or was subsumed into her later HUD complaint.

years prior to the instant lawsuit being filed on March 22, 2017. They also contend that the undisputed evidence shows that Plaintiff's rights under the FHA were not violated.

Defendants assert that Plaintiff was evicted because she interfered with management at Wedgewood Towers and disturbed the peaceful enjoyment of other residents multiple times in violation of her lease. They point to the incidents that occurred on June 24, 2015, June 16, 2016, and September 8, 2016, as disruptive incidents involving Plaintiff that led Defendant Greer to make the decision to evict Plaintiff.

Defendants deny that Plaintiff's race, national origin, gender, religious beliefs, or any other protected category was a factor in the eviction decision. Defendants further deny that the decision was influenced in any manner by either Plaintiff's involvement in the Resident Association or the fact that she had filed HUD complaints.

Finally, Defendants argue that Plaintiff does not have factual or legal support for any other type of claim. They contend that Plaintiff admitted in her deposition that her allegation of "identity theft" has nothing to do with her housing case and, further, that she has not actually set out a legal cause of action based upon allegations of "identity theft."

In response, Plaintiff submits (1) a five-page handwritten filing that sets out facts that she contends support her case, *see* Docket Entry No. 40 at 1-7, as well as (2) a response to Defendants' Statement of Undisputed Material Facts. *Id.* at 8-30. Additionally, she submits 184 pages of documents in support of her case, many of which contain handwritten notations by her about the case. *See* Docket Entry No. 40-1. Included in these documents are copies of Defendants' motion, memorandum in support, and the affidavits of Defendants Greer and Horner and attached exhibits,

7

upon which Plaintiff has made substantial handwritten notes in rebuttal to Defendants' arguments. *See* Docket Entry No. 40-1 at 23-82.

Also before the Court is Defendants' reply. *See* Docket Entry Nos. 41 and 42. Defendants dispute that Plaintiff has supported her case and contend that none of Plaintiff's filings raise genuine issues of material fact that are sufficient to deny their motion for summary judgment. Defendants also request that their motion be deemed unopposed because of the unorthodox manner of Plaintiff's response. *See* Docket Entry No. 41 at 1. Given (1) the obvious steps Plaintiff has taken to oppose the motion and (2) her *pro se* status, the Court declines Defendants' request and reviews the motion as contested.

## IV. STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875 (2000). The Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir.), *cert. denied*, 534 U.S. 896 (2001).

8

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, at 249-50. "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). *See Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003).

## V. ANALYSIS

As an initial matter, the Court notes that Plaintiff's complaint does not set out specific legal claims. Like many *pro se* plaintiffs, she essentially recounts to the Court a series of events, contends that she has been wronged, and leaves it for the Court to determine what legal claims are at issue. In the Court's initial review of the lawsuit pursuant to 28 U.S.C. § 1915(e)(2), the Court construed Plaintiff's complaint as being brought under the FHA. *See* Docket Entry No. 3 at 1. Plaintiff has not amended her complaint to include, and she has not otherwise raised, any additional, specific legal claims. Accordingly, the Court treats this lawsuit as raising only claims for alleged violations of the FHA.

Plaintiff's response to the motion for summary judgment is likewise problematic. Although Plaintiff has filed hundreds of pages of documents, the documents are not certified and she has not accompanied the documents with affidavits, declarations, or any type of statements that are sworn under oath. Additionally, many of the factual allegations made in her handwritten comments on the documents and throughout her response are either hearsay statements, unsupported allegations, or argument. Generally, unauthenticated documents and unsupported factual allegations cannot be

9

considered as evidence rebutting a motion for summary judgment. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n.17 (1970); *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 613 n.3 (6th Cir. 2007); *Moore v. Holbrook*, 2 F.3d 697, 698-99 (6th Cir. 1993); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 969 (6th Cir. 1991). For example, although Plaintiff has made a specific response to Defendants' statement of undisputed facts, her response largely consists of mere unsupported allegations on her part. *See* Docket Entry No. 40 at 8-30. Finally, although Plaintiff filed a list of current or former Wedgewood Tower residents and requests that subpoenas be issued for these individuals, *see* Docket Entry No. 40-1 at 173-182, it is the responsibility of Plaintiff, not the Court, to gather her own witness testimony by obtaining and filing affidavits or declarations that she believes support her case.

Nonetheless, in light of Plaintiff's *pro se* status, the Court has attempted to give Plaintiff some measure of leeway and liberality during the review of her filings and her response to Defendants' motion for summary judgment. In the end, however, there is simply a lack of admissible evidence before the Court upon which a reasonable jury could find in favor of Plaintiff on her claims. Accordingly, Defendants are entitled to summary judgment. Any issues of fact that exist do not rise to the level of genuine issues of material fact that must be resolved at trial.

A. Fair Housing Act

Broadly speaking, the FHA prohibits discrimination in the sale or rental of housing and in the provision of housing services or facilities because of race, color, religion, sex, familial status, or national origin. *See Hollis v. Chestnut Bend Homeowners Ass'n*, 760 F.3d 531, 537 (6th Cir. 2014). Although Plaintiff does not refer to 42 U.S.C. § 3604 in her filings, two subsections of Section 3604

10

are applicable to this case. Subsection 3604(a) makes it unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). Subsection 3604(b) makes it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).

B. Plaintiff's Eviction

The most identifiable claim raised by Plaintiff in her complaint is that she was wrongfully evicted from her apartment in violation of the FHA. Plaintiff has not offered any direct evidence showing that she was evicted because of her race, national origin, or any other protected status. "Direct evidence is evidence that proves the existence of a fact without requiring inferences." *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Absent from Plaintiff's proof is evidence of a remark or statement that clearly links the eviction to a discriminatory animus or motive.

Accordingly, the claim is subject to the three-part indirect evidentiary standard set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), that is used in employment discrimination cases. *Mencer v. Princeton Square Apartments*, 228 F.3d 631, 634 (6th Cir. 2000). Plaintiff must first establish a *prima facie* case of discrimination. Then, in response, Defendant must offer a legitimate nondiscriminatory reason for the challenged housing decision. Finally, to succeed on her

11

claim of unlawful discrimination, Plaintiff must show that the proffered reason is a pretext that masks discrimination. *Id.*

Defendants initially argue that Plaintiff cannot establish a *prima facie* case of an unlawful eviction because she cannot show that she was treated differently than a similarly situated Wedgewood Towers resident who was not in her protected class. Specifically, Defendants contend that Plaintiff has no evidence than there was another Wedgewood Towers resident who is not in her protected class and who was not evicted despite receiving multiple lease violation warnings in the same manner as Plaintiff. *See* Memorandum of Law at 13-16.

For the purposes of this motion, it is not necessary to resolve the issue of whether Plaintiff satisfies a *prima facie* case because, assuming that she does, there is insufficient evidence before the Court to support a reasonable conclusion that Defendants' proffered reason for evicting Plaintiff was a pretext for unlawful housing discrimination. Defendants contend that Plaintiff was evicted because she violated her lease on three occasions by acting in a manner that disturbed the quiet and peaceful enjoyment of other residents and interfered with management. *See* Affidavit of Greer at ¶ 8. This is a legitimate, non-discriminatory reason for the challenged eviction and shifts the burden to Plaintiff to show that the reason is a pretext. To satisfy this burden, Plaintiff must "identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Lindsay v. Yates*, 578 F.3d 407, 420 (6th Cir. 2009) (*quoting Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007)).

Pretext can be established by (1) a direct evidentiary showing that a discriminatory reason more likely motivated the challenged decision or by (2) an indirect evidentiary showing that the Defendants' explanation for the challenged decision is not credible. *Yates*, 578 F.3d at 421. As

12

noted in *Yates:* "mere conjecture that the [Defendants'] explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Id.* Plaintiff must produce sufficient evidence from which the jury may reasonably reject Defendants' explanation. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994). In order to show that Defendants' explanation lacks merit, Plaintiff must demonstrate that the proffered reason: (1) had no basis in fact, (2) was not the actual reason for her eviction, or (3) was insufficient to explain the eviction decision. *Id.* at 1084.

Even when viewed in the light most favorable to Plaintiff, her rebuttal to Defendants' proffered reason is insufficient to satisfy her burden. The undisputed evidence shows that the three noted incidents did occur. Plaintiff admits to leaving a threatening voice mail message with Defendant Horner in June 2015 and following up with a similar e-mail.[8] Further, Plaintiff acknowledges that an incident occurred between herself and Defendant Horner in June 2016 after two events were scheduled for the same time when she was "frustrated" and could have raised her voice at Defendant Horner.[9] Finally, Plaintiff admits that an incident occurred in September 2016 involving resident Zena Downs in which Plaintiff spoke in a "firm" and "stern" tone to Ms. Downs,[10] and Defendants have provided evidence that Ms. Downs was crying and shaking after the incident.[11] While Plaintiff disputes the severity of the incidents and disputes that she yelled or cursed during the final incident, the three notable incidents clearly occurred. Further, although she contends that

---

[8] *See* Plaintiff's Deposition at 71-77, 79,

[9] *Id.* at 91-92.

[10] *Id.* at 64, 67, .

[11] *See* Horner Affidavit at ¶ 19.

13

there were witnesses to the events and alleges that Defendant Horner "went around asking the residents to lie on me stating that I was disruptive and I woke the entire [building] or residents up," *see* Complaint at 2, she has not filed sworn affidavits or declarations from any other resident or any witness to these events or to her allegations.

Plaintiff has also not offered any objective evidence showing that Defendants' stated reason was not the real reason for the eviction decision or that the lease violations were not a sufficient basis to support an eviction. Evidence of either of these factors would create a triable issue for the jury. However, Plaintiff's subjective belief that these incidents were not the "real reason" for her eviction is not sufficient to rebut the summary judgment motion because mere conclusory and unsupported allegations, rooted in speculation, do not meet a plaintiff's burden at the summary judgment stage. *See Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003). Further, Plaintiff has not offered any evidence that there were other residents at Wedgewood Towers who committed multiple lease violations similar to those at issue but whose violations were overlooked by Defendants.

Plaintiff points to two matters as support for her assertion that Defendants' explanation for her eviction is not credible. First, she contends that Ms. Downs, who is white, was not evicted despite cursing at Plaintiff during the September 2016 incident. However, even if the Court takes it as true that Ms. Downs cursed at Plaintiff, the undisputed evidence nonetheless shows (1) that Ms. Downs was sent a lease violation letter regarding the incident,[12] and, (2) that Ms. Downs had not received any other lease violation letters in the past.[13] Thus, Plaintiff was not treated differently than Ms. Downs with respect to the incident itself since both residents received lease violation letters.

---

[12] *See* Docket Entry No. 35-5.

[13] *See* Horner Affidavit at ¶¶ 21-22.

14

The differing treatment of Plaintiff regarding her eviction was linked to the prior lease violation letters that she had received. Had Ms. Downs also received prior letters but not faced an eviction because of the September 2016 incident, Plaintiff's argument would be much more probative of the issue of unlawful animus and therefore more persuasive.

Second, Plaintiff points to the undisputed fact that the lease violation letters that she received from Hall & Associates contained language referring to "the validity of this debt" and to "collecting" a debt. Plaintiff contends that this language indicates that one of the reasons set forth by Defendants for her eviction was because she had not paid her rent, a reason which she asserts would be false and not credible in light of evidence she has showing that she always paid her rent.

Plaintiff is correct that the lease violation letters she received from Defendants' attorney contained language regarding collection of a debt. However, the language at issue is obviously "boiler plate" language regarding debt collection that was either mistakenly or sloppily inserted into the letters.[14] The debt collection language makes no actual reference to unpaid rent or a specific debt that was owed by Plaintiff regarding the apartment. Further, the initial paragraphs of the letters specifically set out that the asserted lease violations at issue were disturbing the quiet and peaceful enjoyment of other tenants and/or interfering with management. None of the letters alleged a lease violation related to Plaintiff not paying her rent. Additionally, Plaintiff has not offered other evidence showing that Defendants had asserted that she had not paid her rent. While it is somewhat understandable that the letters may have been confusing to Plaintiff because of the unnecessary

---

[14] Although Defendants offer an explanation for why this language was included in the September 19, 2016, letter, *see* Memorandum of Law at 18-19, the explanation is unpersuasive and somewhat nonsensical.

15

inclusion of the debt collection language, Plaintiff's argument that she was evicted by Defendants for the false reason of non-payment of her rent is a thin reed and fails to evidence pretext.

For these reasons, Plaintiff fails in her burden of showing pretext. Based on the admissible evidence that is before the Court, no reasonable jury could find that Plaintiff was evicted from her apartment because of a discriminatory animus against her due to her race, national origin, sex, or any other protected category under the FHA.


C. Other FHA Claims

In addition to her eviction, Plaintiff mentions other events in her complaint that can liberally be construed as additional FHA claims under Section 3604(b) for discriminatory treatment with respect to the "terms, conditions, or privileges" of her apartment lease "or in the provision of services or facilities in connection therewith." However, these claims also warrant dismissal.

Plaintiff specifically complains about being asked to show her proof of citizenship when she moved into her apartment but that it was "not requested from Delia Harris." *See* Complaint at 3. Plaintiff fails to present any actual evidence supporting the allegation that no proof of citizenship was required of Mrs. Harris. She also fails to explain how the request that she show her proof of citizenship constitutes an act of housing discrimination under the FHA. Further, given that Plaintiff moved into her apartment on or about July 30, 2013, any claim based upon this event would be barred by the two year statute of limitations that is applicable to FHA claims. 42 U.S.C. § 3613(a)(1)(A); *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 939 (6th Cir. 1999).

Plaintiff also makes specific allegations of the "destruction of personal property" and of "identity theft." *See* Complaint at 2 and 3. However, Plaintiff again fails to show how either of

16

these wrongdoings, even if they occurred, were acts of unlawful housing discrimination under the FHA. Although Plaintiff clearly believes that Defendant Horner was involved in committing "identity theft," this lawsuit concerns only those rights protected by the FHA, and an independent claim for "identity theft" is not at issue in this lawsuit.

Plaintiff alleges that she suffered "humiliation by lying that I was not paying my rent." *Id.* at 3. As already analyzed *supra* at Section V.B., the lease violation letters that contained the language about a "debt" are not evidence showing pretext for discrimination and Plaintiff has not offered any evidence that Defendants regarded her as not paying her rent or "lied" about the status of her rent payments. There is nothing before the Court that would support an independent FHA claim based upon this allegation.

Finally, even though Plaintiff makes a general allegation of discrimination due to ethnicity, sex, and national origin, *id.* at 3, her complaint does not specifically set out other events as grounds for claims under Section 3604. Whether the hundreds of pages of documents filed by Plaintiff contain other plausible claims is not a task the Court must undertake to ascertain; it is Plaintiff's duty as the party bringing this lawsuit to clearly identify, raise, and support such claims. For example, Plaintiff undisputedly wrote numerous complaint letters to Defendants, filed a formal HUD complaint, wrote a handwritten HUD complaint, and sent numerous e-mails to Defendants and others about her situation at Wedgewood Towers. However, her complaint identifies only a few of these incidents as the basis for claims. To extrapolate additional claims would essentially require the Court to conduct a review of the totality the documents filed by Plaintiff and then decide which claims Plaintiff intends to pursue and which claims she intends to not pursue. Even though Plaintiff proceed *pro se*, the Court is simply not required to scour the record and create Plaintiff's claims for

her, because to do so would require the Court to explore exhaustively all potential claims and would "transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *See Bell v. Tennessee*, 2012 WL 996560, at *9 (E.D. Tenn. March 22, 2012) (quoting *Thompson v. A.J. Rose Mfg. Co.*, 208 F.3d 215 (6th Cir. 2000). *See also Brown v. Matauszak*, 415 Fed.App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.") (internal quotation marks omitted).

## D.  Retaliation Claim

Plaintiff alleges that Defendant Horner evicted her "due to the ongoing investigation" and that Defendant Horner "tried and did everything to hinder the Resident Association or to get me out. I filed a complaint to HUD and she evicted most the people that testified on my behalf." *See* Complaint at 1-2. As such, Plaintiff asserts a claim that she was retaliated against because of (1) participating in the Resident Association and (2) filing a HUD complaint.

Plaintiff's allegation that she was retaliated against because of her participation in the Resident Association fails to state a legal claim, and Defendants are entitled to summary judgment on this claim. As noted by Defendants in their supporting memorandum, 12 U.S.C. § 1715z-1b(b)(4) provides residents at Wedgewood Towers with a statutory right [15] to form a tenant organization and the implementing regulations for this statutory right set out specific activities that are protected. 24 C.F.R. § 245.115. However, as also noted by Defendants, there is no accompanying private cause

---

[15] The statement in Defendant Greer's affidavit that the Resident Association was established under 15 U.S.C. § 1692(g)(a), see Affidavit at ¶ 7, is clearly incorrect.

of action associated with either the statutory right or the implementing regulations. Plaintiff has not provided authority that creates a claim for retaliation linked to participation in the Resident Association.

Plaintiff's allegation that she was retaliated against because of filing a HUD complaint or otherwise engaging in activity protected by the FHA, on the other hand, clearly implicates a legal claim. The anti-retaliation provision of the FHA makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617; *Hidden Vill., LLC v. City of Lakewood, Ohio*, 734 F.3d 519, 528 (6th Cir. 2013). To state a claim under Section 3617, Plaintiff must establish (1) that she exercised or enjoyed a right guaranteed by Sections 3603-606; (2) that a Defendant's intentional conduct constituted coercion, intimidation, threat, or interference; and (3) a causal connection between her exercise or enjoyment of a right and Defendant's conduct. *Hood v. Midwest Sav. Bank*, 95 Fed.App'x. 768, 779 (6th Cir. 2004). Additionally, the law within the Sixth Circuit requires a showing of "discriminatory animus" to support a claim under Section 3617. *Campbell v. Robb*, 162 Fed.App'x. 460, 473-474 (6th Cir. 2006) (citing *Mich. Prot. & Advocacy Serv. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994)).

Plaintiff's claim fails because she has not set forth any evidence showing that a causal link exists between her eviction and her pursuit of a HUD complaint. The showing of a causal link is one factor necessary for her retaliation claim. *Shelton v. Waldron*, 2013 WL 5938016 at *3 (M.D.Tenn. Nov. 5, 2013) (Campbell, J.) Plaintiff's subjective speculation that Defendants acted with a retaliatory motive is not sufficient to defeat the motion for summary judgment. *Id*. Plaintiff presents

19

no other type of objective evidence that would reasonably infer that a retaliatory animus existed linking her eviction to her protected activity. Further, as set out above with respect to Plaintiff's inability to show pretext for her eviction claim, she fails to provide sufficient evidence that Defendants' proffered reason for evicting her is not credible and is unworthy of belief.

Although not clearly asserted in her complaint, to the extent that Plaintiff alleges that she was evicted because she advised other residents of their FHA rights as part of her activities within the Resident Association, she fails to provide any evidence showing that this activity was known about by Defendants. Such a lack of evidence is fatal to any retaliation claim that is based upon this allegation. *Robbins v. Am. Preferred Mgmt. Co.*, 2007 WL 2728746 at *11 (W.D.Mich. Sept. 17, 2007).

## RECOMMENDATION

Based on the forgoing, the undersigned respectfully RECOMMENDS that Defendants' motion for summary judgment (Docket Entry No. 31) be GRANTED and that this action be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v.*

*Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge